**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:**<br><br>**COOPER-BOOTH WHOLESALE COMPANY, L.P.**<br><br>**Debtor** | : | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 13-14519(MDC)** |
| **In re:**<br><br>**COOPER-BOOTH TRANSPORTATION COMPANY, L.P.**<br><br>**Debtor** | : | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 13-14521(MDC)** |
| **In re:**<br><br>**COOPER-BOOTH MANAGEMENT COMPANY, INC.**<br><br>**Debtor** | : | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 13-14522(MDC)** |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §363(c) AND FED.R.BANKR.P. 4001, AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

Cooper-Booth Wholesale Company, L.P. (the "Wholesale Debtor"); Cooper-Booth Transportation Company, L.P. (the "Transportation Debtor"); and Cooper-Booth Management Company, Inc. (the "Management Debtor") (at times, the Wholesale Debtor, the Transportation Debtor, and the Management Debtor are collectively referred to herein as the "Debtors"), by and through their proposed counsel, Maschmeyer Karalis P.C., hereby move this Court, pursuant to §363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Pursuant to 11 U.S.C. §363(c) and Fed.R.Bankr.P. 4001, Authorizing Debtors to Use Cash

Collateral and Provide Adequate Protection, (the "Motion") and in support thereof, aver as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' Chapter 11 cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein are §363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

i.

## BACKGROUND

2. On May 20, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have remained in possession of their assets and continue in the management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Declaration of Barry Margolis in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

4. No trustee or examiner has been appointed in these cases. No official committee of unsecured creditors has been appointed in these cases.

## PRE-PETITION FINANCING FROM PNC BANK, N.A.

5. Line of Credit Facility. On August 30, 2011, the Wholesale Debtor entered into that certain Letter Agreement with PNC Bank, National Association ("PNC"), providing for a line of credit facility (the "**Line of Credit Facility**") of up to $15,000,000.00 (the "**Maximum**

**Amount**"). Pursuant to a series of amendments, , the Line of Credit Facility has been extended and modified as amended, supplemented or modified from time to time, the latest dated December 6, 2012. The Line of Credit Facility currently provides that PNC will advance an amount at any time outstanding not to exceed in the aggregate the Maximum Amount of (a) $15,000,000 for the period commencing December 1st, through March 1st of each year in which PNC makes the Line of Credit Facility available to Wholesale, and (b) $10,000,000 for the period commencing March 2nd through and including November 30th of each year in which PNC make the Line of Credit Facility available to the Wholesale Debtor. As of the May 16, 2013, outstanding principal obligations under the Line of Credit Facility were $7,721,731.

6. Equipment Finance Loan. On December 20, 2012, the Wholesale Debtor and the Transportation Debtor executed and delivered to PNC Equipment Finance, LLC ("PNCEF") that certain Loan and Security Agreement (the "**Equipment Loan Facility**"), subject to the conditions set forth therein, to make a loan or loans to be used for the purpose of acquiring personal property used in the operation of the Debtors' businesses. On December 20, 2012 an advance was made pursuant to a Request for Advance in the original principal amount of $1,078,444.00 (the "1st Staged Advance"). Another advance was made pursuant to a Request for Advance in the original principal amount of $353,460.00 (the "2nd Staged Advance"). On May 13, 2013 an advance was made pursuant to a Request for Advance in the original principal amount of $1,468,710 (the "3rd Staged Advance"). As of the Petition Date, outstanding principal obligations under the Equipment Loan Facility were approximately $2,828,718.

7. Corporate VISA Card. On September 12, 2011, the Wholesale Debtor entered into that certain VISA Commercial Card Agreement with PNC establishing an "Active Pay Payable Card Program" (the "**Active Pay Program**") whereby PNC extends credit up to

$1,000,000 to the Wholesale Debtor for 10 or more VISA Cards to be used solely for business purposes. As of the Petition Date, outstanding principal obligations under the Active Pay Program were approximately $ 166,000.

8. Collateral. A review of the PNC loan documents is ongoing. PNC asserts that the Letter of Credit Facility is secured by all personal property owned by the Wholesale Debtor. PNCEF asserts that the Equipment Finance Loan is secured by all equipment and other goods, all software and other general intangibles, and other property described in the loan agreement for the Equipment Loan Facility. PNC's collateral for the Corporate VISA Card is believed to be limited to the Wholesale Debtor's property in PNC's possession, including deposit accounts.

9. The unpaid aggregate obligations of the Debtors to PNC and PNCEF under the pre-petition credit facilities excluding accrued interest as of the Petition Date were approximately $10,716, 448.

10. The Debtors' primary assets are cash, accounts receivable, inventory, machinery, equipment, and vehicles.

11. The Debtors have been in discussions with PNC to reach a consensual agreement on the Debtors' use of cash collateral and the adequate protection to be afforded to PNC after the Petition Date. However, in the event no agreement is reached, the Debtors are requesting that the Court authorize the use of cash collateral.

12. The Debtors, in the normal course of their businesses, incur obligations to suppliers, for a variety of goods and services, and their employees which are essential to the continued existence of the Debtors as going concerns. Absent the immediate authority to use their cash, the Debtors do not have the funds with which to conduct business.

13. The Debtors will lose significant revenue if they cannot immediately purchase supplies to fill their customer orders as needed. The Debtors project collections from sales for the remainder of this week of approximately $7,000,000 which require purchases for Wednesday, Thursday and Friday of this week of approximately $2,700,000 as well as operating expenses of approximately $61,000 for the remainder of this week including the cost to purchase fuel for its trucks. The Debtors require an immediate hearing to at minimum authorize the use of cash collateral for the immediate expenditures required this week for product and operating expenses. Attached hereto as Exhibit "A" and made part hereof is the Debtor's projected cash receipts and disbursements through the week ending June 15, 2013 (the "Budget").

14. Moreover, the Debtors would not have the ability to make payroll which is due and payable on May 29, 2013[1]. An abrupt cessation of the Debtors' businesses would cause extreme hardship to the Debtors' customers and their numerous creditors and to the approximately two hundred and fifty (250) employees of the Debtors. Simply stated, in order to continue the operation of the Debtors' businesses, it is necessary for the Debtors to immediately be authorized to use their cash collateral.

15. It is also crucial that the Debtors' post-petition payroll obligations be paid as these obligations come due.

16. The Debtors must maintain its relationship with its employees so that the essential services they provide are uninterrupted. If the Debtors' present employees terminate their employment, the Debtors will be forced to hire new, untrained employees. As a result, clients will receive less than satisfactory service. The Debtors will suffer negative publicity and Debtors' relationship with their creditors could also be jeopardized.

---

[1] Payroll is normally made on the Tuesday of every week. However, in light of Memorial Day, the next payroll is scheduled to be paid on Wednesday, May 29, 2013, instead of Tuesday, May 28, 2013.

## RELIEF REQUESTED

### A. USE OF CASH COLLATERAL

18. The Debtors request that the Court authorize the Debtors to use (a) cash, (b) proceeds of the pre-petition collateral, and (c) such other funds that the Debtors obtain post-petition which may be subject to PNC's pre-petition security interest.

19. The Debtors request authority to use cash collateral in the amount set forth in the Budget. The use of cash collateral is necessary in order for the Debtors to be able to operate and pay their post-petition obligations as they come due.

20. Approval of the Debtors' request to use cash collateral is in the best interest of the Debtors, their estates and creditors.

21. In accordance with Bankruptcy Rule 4001, the Debtors request that the use of cash collateral first be preliminarily approved and then subsequently be finally approved at a subsequent hearing upon further notice to parties in interest.

22. In accordance with Bankruptcy Rule 4001, the Debtors request that the final hearing be scheduled so that at least fourteen (14) days-notice has been provided to parties in interest.

23. The entry of any Order authorizing the use cash collateral is without prejudice to the rights of the Debtors, their creditors, any trustee appointed herein, or other party in interest, to contest the validity, extent or priority of any rights granted pursuant to the Pre-Petition Credit Facilities or any security interest arising out of or related to Pre-Petition Credit Facilities.

24. Neither the Debtors' use of cash collateral nor any payments that may be authorized by the Court to PNC constitute a waiver by PNC or the Debtors or any other party in

interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of PNC's security interests.

**WHEREFORE,** the Debtors respectfully request that the Court (i) enter an Order at the time of the hearing granting the relief requested herein and (ii) grant such other and further relief as this Court may deem just and proper.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By: /s/ Aris J. Karalis
ARIS J. KARALIS
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Proposed Attorneys for the Debtors

Dated: May 21, 2013