**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:**<br><br>**COOPER-BOOTH WHOLESALE COMPANY, L.P.**<br><br>**Debtor** | : | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 13-14519 (MDC)** |
| **In re:**<br><br>**COOPER-BOOTH MANAGEMENT COMPANY, INC.**<br><br>**Debtor** | : | **CHAPTER 11**<br><br>**BANKRUPTCY NO. 13-14522 (MDC)** |

# MOTION OF COOPER-BOOTH WHOLESALE COMPANY, L.P. AND COOPER-BOOTH MANAGEMENT COMPANY, INC. FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PRE-PETITION (I) WAGES, SALARIES, AND OTHER COMPENSATION, (II) REIMBURSABLE EMPLOYEE EXPENSES, AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS; (B) CONFIRMING THAT THE DEBTORS MAY CONTINUE PRE-PETITION EMPLOYEE PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; AND (C) DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Cooper-Booth Wholesale Company, L.P. (the "Wholesale Debtor") and Cooper-Booth Management Company, Inc. (the "Management Debtor") (collectively, the "Debtors"), by and through their proposed counsel, Maschmeyer Karalis P.C., hereby move (the "Motion") this Honorable Court for the entry of an Order (a) authorizing, but not directing, the Debtors to pay certain pre-petition (i) wages, salaries, and other compensation, (ii) reimbursable employee expenses, and (iii) employee medical and similar benefits; (b) confirming that the Debtors may continue their pre-petition employee benefit programs in the ordinary course of business; and (c) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and in support thereof, respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363(b)(1), 363(c)(1), 507(a)(4), 507(a)(5), 541(b), and 1129(a)(9)(B) and Fed.R.Bankr.P. 6003.

## BACKGROUND

4. On May 21, 2013 (the "Petition Date"), the Debtors and Cooper-Booth Transportation Company, L.P. filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession of their assets and continue in the management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Declaration of Barry Margolis in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

### A. Employees, Programs and Benefits.

6. As of the Petition Date, the Debtors employed approximately two hundred and fifty (250) employees (the "Employees"). Barry Margolis is the only employee of the Management Debtor.

7. The Employees perform a variety of critical functions including customer service, purchasing, sales, credit, finance, accounting, human resources, manufacturing,

delivery, dispatch, mechanical work, marketing, management, and other tasks. The Employees' skills and their knowledge and understanding of the Debtors' operations, customer relations, and infrastructure are essential to the Debtors' businesses.

8. Just as the Debtors depend on their Employees to operate, the Employees depend on the Debtors. The vast majority of the Debtors' Employees rely exclusively on their compensation and benefits to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay them their full unpaid compensation, benefits, and reimbursable expenses in the ordinary course of business.

9. To minimize the personal hardship that the Employees would suffer if pre-petition Employee-related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtors' workforce during this critical time, the Debtors, by this Motion, seek authority to pay and honor, in their sole discretion, certain pre-petition claims for, among other items: wages, salaries, commissions, and other compensation, expense reimbursement, federal and state withholding taxes and other amounts withheld (including, garnishments, Employees' share of insurance premiums and taxes), health benefits, insurance benefits, vacation time, life insurance, and all other benefits that the Debtors have historically provided in the ordinary course of business (collectively, and as more fully described below, the "Employee Obligations") and to pay all costs incident to the foregoing. In an abundance of caution, the Debtors request the right to modify, change, and discontinue any of its employee compensation, programs, policies and benefits, and to implement new programs, policies and benefits in the ordinary course of business during these Chapter 11 Cases in their sole discretion without the need for further Court approval.

**B. Employee Obligations.**

**1. Unpaid Compensation**

10. In the ordinary course of business, the Debtors incur payroll obligations to the Employees. Such obligations generally comprise wages, salaries and commissions, but may also include expense reimbursement.

11. The Wholesale Debtor generally pays its Employees periodic payments for wages and salaries every Tuesday for the week ending the prior Saturday. However, in light of Memorial Day, the next payroll for the Wholesale Debtor is scheduled to be paid on Wednesday, May 29, 2013, instead of Tuesday, May 28, 2013. They are paid one week in arrears. The Employees who also receive a sales commission are paid this commission with their paychecks every week and bonuses are paid once every month.

12. The Management Debtor pays Barry Margolis one month in arrears on the fifteenth (15th) day of every month. On a prospective basis, the wages of Mr. Margolis will be paid on a weekly basis by the Wholesale Debtor along with all other employees.

13. On average, the Debtors have gross wage and salary expenses of approximately $248,000 every week. The gross commission expenses are approximately $23,700.00 every week.

14. The Debtors process their own payroll. The Debtors are responsible for paying all the withholdings and payroll taxes (discussed below) to the applicable third parties.

15. Because all of the Employees are paid in arrears, as of the Petition Date, the Employees may not have been paid all of their pre-petition wages and compensation. Additionally, some Employees may be entitled to compensation because some checks issued to Employees prior to the Petition Date may not have been presented for payment or may not have

cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date (the "Uncashed Checks").

16. The Debtors estimate that, as of the Petition Date, approximately $94,500.00 in pre-petition accrued wages, salaries, and commissions earned prior to the Petition Date remains unpaid (together with the Uncashed Checks and Reimbursable Expenses (as defined below) the "Unpaid Compensation"). As of the Petition Date, the Debtors believe that there may be uncashed payroll and employee reimbursement checks. The Debtors seek authority, but not direction, to pay the Unpaid Compensation, along with any costs associated therewith.

17. The Debtors submit that no employee has Unpaid Compensation in excess of the $12,475.00 statutory priority cap imposed by sections 507(a)(4) and (5) of the Bankruptcy Code. Accordingly, payment of Unpaid Compensation to the Employees would not violate the statutory priority afforded wages, salaries and other forms of compensation, but would merely accelerate its payment.

18. To the extent any other Unpaid Compensation exceeds the statutory priority cap imposed by sections 507(a)(4) and (5) of the Bankruptcy Code, such payments would be de minimis. Nonetheless, the Debtors are not hereby seeking authority to pay any of the Employees on account of pre-petition accrued wage or benefit obligations in excess of the $12,475.00 priority cap.

**2. Deductions and Withholdings**

19. During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including, without limitation, (a) garnishments, child support, and similar deductions, and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein (such as an Employee's share of health care benefits and insurance premiums (collectively, "Deductions"). The Debtors

forwards the amount of the Deductions to the appropriate third-party recipients. Due to the commencement of the Chapter 11 Cases, however, certain Deductions that were deducted from Employees' earnings may not have been forwarded to the appropriate third-party recipients prior to the Petition Date. Accordingly, the Debtors request authority, but not direction, to forward any unpaid Deductions to the appropriate third party recipients and to continue to forward these pre-petition Deductions to the applicable third party recipients on a post-petition basis, in the ordinary course of business as routinely done prior to the Petition Date. The Debtors also request authority, but not direction, to honor pre-petition checks associated with employee benefits.

18. Further, the Debtors are required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "Withheld Amounts"). The Debtors must then pay social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes").

19. Prior to the Petition Date, the Debtors withheld the appropriate amounts from Employees' earnings for the Withheld Amounts and the Employer Payroll Taxes (collectively, the "Payroll Taxes"), but such funds may not yet have been forwarded to the appropriate taxing authorities. The Debtors request authority, but not direction, to forward any outstanding Payroll Taxes to the appropriate third parties, and to continue to honor and process the pre-petition payments for Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date.

### 3. Honoring Checks for, and Payment of, Reimbursable Expenses

20. Prior to the Petition Date and in the ordinary course of their operations, the Debtors reimbursed Employees for certain reasonable and customary expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses"). The Reimbursable Expenses include (a) travel expenses for meals, hotels and rental cars, (b) business development expenses, (c) telephone expenses, and (d) other organization-related expenses that are paid by the Employees. As of the Petition Date, the Debtors have approximately $18,500.00 in pending requests for expense reimbursement. In addition, it is possible that certain Employees may have incurred pre-petition expenses for which they have not yet submitted requests for reimbursement and will submit such requests to the Debtors after the Petition Date. The Debtors estimate that the amount of post-petition requests for reimbursement of pre-petition expenses will not exceed $24,700.00.

21. Reimbursable Expenses are all incurred on the Debtors' behalf and with the understanding that they will be reimbursed. Accordingly, to avoid harming Employees who may have incurred the Reimbursable Expenses, the Debtors request authority, to be exercised in their sole discretion, to (a) continue paying Reimbursable Expenses in accordance with pre-petition practices, (b) modify their pre-petition policies relating thereto as they deem appropriate, and (c) pay all Reimbursable Expenses that relate to the pre-petition period and are submitted to the Debtors post-petition.

## C. Employee Benefits

22. The Debtors offer Employees the ability to participate in a number of insurance and benefits programs, including health care, vacation time and other paid leaves of absence, retirement savings plans, life insurance, programs and bonuses (collectively, the "Employee Benefit Programs").

**1. Medical**

23. The Debtors offer third party carrier health insurance to its Employees for medical coverage and co-pay prescription benefits (collectively, the "Health Insurance").

24. The Health Insurance coverage costs the Debtors approximately $600,000.00 per year.

25. Only full-time Employees who have completed their sixty (60) day orientation and training period are eligible for Health Insurance.

26. By this Motion, the Debtors seek authority, in their sole discretion, to (a) continue the Health Insurance for its Employees in the ordinary course of business, (b) continue making contributions to such benefit programs, and (c) pay any amounts related thereto, including on account of any premiums, claim amounts, and administration fees to the extent that they remain unpaid as of the Petition Date.

**2. Vacation and Other Leaves of Absence**

27. The Debtors provide vacation time to its full-time Employees as a paid time-off benefit (the "Vacation Time"). The amount of Vacation Time available to a particular Employee and the rate at which such Vacation Time accrued is generally determined by the Employee's length of employment. When an Employee elects to take Vacation Time, that Employee is paid his or her regular hourly or salaried rate.

28. The Debtors also allow their Employees to take certain other leaves of absence for personal reasons, many of which are required by law ("Leaves of Absence"). Leaves of Absence include sick leave, family medical leaves, pregnancy, adoption and foster care leaves, military leaves, jury duty, voting leaves, personal leaves, and bereavement leaves. Employees are eligible for Leaves of Absence if they have been employed for at least twelve (12) months and worked more than one thousand two hundred and fifty (1,250) hours during the previous twelve (12) month period. The Debtors estimate that approximately

$175,000.00 of earned but unused Vacation Time and Leaves of Absence will have accrued as of the Petition Date.

29. By this Motion, the Debtors request that they be authorized, but not directed, to continue to honor their Vacation Time and Leaves of Absence policies in the ordinary course of business, and to honor and pay any pre-petition amounts related thereto. Moreover, the Debtors anticipate that their Employees will utilize any accrued Vacation Time and Leaves of Absence in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

**3. Employee Savings and Retirement Plans**

30. The Debtors maintain a traditional 401(k) retirement plan meeting the requirements of the Internal Revenue Code for the benefit of Employees (the "Retirement Plans"). The Retirement Plans allow for deductions of eligible compensation up to the limits set by the Internal Revenue Code. Employees who have completed one year of employment, one thousand (1000) hours of service, and who are twenty-one (21) years of age may participate in the Retirement Plans. The Employee's Retirement Plan contributions are approximately $5,300.00 every week. The Debtor matches the Employees' contributions up to the sum of $900.00 per week.

31. By this Motion, the Debtors seek confirmation that they may continue the Retirement Plans in the ordinary course of business, and requests authority to pay any amounts owed as of the Petition Date. The Debtors estimates that as of the Petition Date, the sum of $5,200.00 must be forwarded to the Retirement Plans.

**4. Additional Employee Benefits**

**a. Life Insurance**

5. The Debtors provide their Employees with primary life insurance and accidental death and dismemberment insurance coverage. This coverage is available to full time Employees who have finished their sixty (60) day probation period.

6. This coverage costs the Debtors approximately $4,150.00 per year.

**b. Programs and Bonus Plans**

7. The Debtors allows their Employees to take part in purchase programs whereby the Employees can purchase items at reduced costs.

8. The Debtors also provide safety and attendance bonuses to their hourly office Employees in the maximum amount of $15.00 per month and their warehouse Employees in the maximum amount of $30.00 per month. These bonuses cost the Debtors approximately $2,100.00 per month.

## RELIEF REQUESTED

9. By this Motion, the Debtors seek: (i) authority to pay and honor, in the ordinary course of business and in their sole discretion pre-petition claims, and obligations related to (a) Unpaid Compensation, (b) Deductions and Payroll Taxes, (c) Reimbursable Expenses, and (d) the Employee Benefit Programs, all as defined and described herein.

10. In addition, the Debtors request that banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors also request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

11. Courts in complex chapter 11 cases have previously approved the same or substantially similar relief as requested herein. See, e.g., In re The Philadelphia Orchestra

Assoc., Case No. 11-13098 (ELF) (Bankr. E.D. Pa. April 20, 2011); In re Lower Bucks Hospital, Case No. 10-10239 (ELF) (Bankr. E.D. Pa. January 15, 2010); In re Philadelphia Newspapers Inc., Case No. 0911204 (SR) (Bankr. E.D. Pa. Feb. 22, 2009); In re Tropicana Entm't, LLC, No. 0810856 (KJC) (Bankr. D. Del. May 6, 2008); In re Leiner Health Prods. Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 9, 2008); In re Wickes Holdings, LLC, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Tweeter Home Entm't Group, Inc., No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); In re Pope & Talbot, Inc., No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); In re Hancock Fabrics, Inc., No. 07-10353 (BLS) (Bankr. D. Del. Mar. 22, 2007).

## Basis for Relief

### A. Sufficient Cause Exists for the Court to Authorize the Debtors to Honor Employee Obligations

12. The Debtors seek authority to satisfy their Employee Obligations to ensure the continued operation of the Debtors' organization and to maintain the morale of their Employees, many of whom would suffer extreme personal hardship and financial difficulty if they are not paid. In addition, the Employee Benefit Programs are an important part of each Employee's total compensation. The Debtors estimate that the aggregate cost of providing the Employee Benefit Programs pales in comparison to the value generated by the Debtors' workforce. Moreover, as with non-payment of wages or reimbursable expenses, any indication that the Employee Benefit Programs may disappear or may not be honored will prove detrimental to the Debtors' operations.

13. Paying pre-petition wages and employee benefits will benefit the estate and its creditors by allowing the Debtors' operations to continue without interruption. Indeed, the Debtors believe that without the requested relief, the Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development

would deplete the Debtors' workforce, hindering the Debtors' ability to meet their customer obligations and, likely, diminishing stakeholder confidence in the Debtors' ability to operate successfully. The loss of valuable Employees and the resulting recruitment of new employees that would be necessary to find replacements of the caliber of the Debtors' current Employees would be distracting and costly at this critical time when the Debtors are stabilizing operations and continuing operational restructuring in Chapter 11. Further, if the Debtors lose valuable Employees, they will incur recruiting expenses in locating replacement staff. Accordingly, there can be no doubt that the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefit, and related obligations, including the Employee Obligations and bonuses that accrued pre-petition.

**1. Payment is Appropriate Pursuant to Section 105(a)**

14. The Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See, 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of pre-petition obligations pursuant to the "doctrine of necessity".

15. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor. See,

Id. (stating that court may authorize payment of pre-petition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). See also, In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 824-845 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay pre-petition claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171 B.R. 189, 19192 (Bankr. D. Del. 1994) (same).

16. The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." See, In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). See also, Just For Feet, 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); Mich. Bureau of Workers' Disability

Comp. v. Chateaugay Corp. (In re Chateauguay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of pre-petition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 COLLIER ON BANKRUPTCY, 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay pre-petition claims immediately).

17. Courts also have permitted post-petition payment of pre-petition claims pursuant to section 105(a) in other situations, such as if nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. See, Ionosphere Clubs, 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

18. This flexible approach is particularly critical where a pre-petition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not satisfy its pre-petition obligations. In In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary, to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately. The court explained that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." See, Id. at 932.

### 2. The Proposed Payments Are Accorded Priority Under Section 507

19. Moreover, all of the Employees' pre-petition wages and other benefits and compensation that the Debtors seek to pay under the authority sought hereby would be entitled in any event to priority treatment to the extent of $12,475.00 for each individual under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. To the extent that the aggregate amount of such claims accrued prior to the Petition Date exceeds this cap, the Debtors do not seek authority at this time to pay such excess amounts. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. See, 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions for contributions to an employee benefit plan). Thus, granting the relief sought herein would only cause such employee claims to be paid early in the cases, instead of waiting until confirmation, to the extent they constitute priority claims.

20. Indeed, "wage priority has been a feature of the bankruptcy law since 1898." See, In re Garden Ridge Corp., No. 04-10324, 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (quoting 4 Collier on Bankruptcy, § 507.05[1] (15th Ed. 2005)). "Its purpose is to 'alleviate hardship on workers...' who may have no other source of income and 'to encourage employees to stand by an employer in financial difficulty.' This priority extends to certain other 'benefits that are considered akin to compensation, such as vacation, severance and sick leave pay.'" See, Id.

21. The Debtors' failure to pay these amounts will devastate morale at a critical time in the Debtors' operations. In addition, all of these amounts have arisen in the ordinary course of the Debtors' operations and are reasonable in relation to the value of the services rendered.

### 3. The Proposed Payments Are Appropriate Under Section 363(b)

22. The Court may also grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Section 363 provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." See, 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain pre-petition claims. See, In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of pre-petition wage claims pursuant to section 363(b)). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." See, Id. at 175.

23. Payment of pre-petition compensation in order to preserve and protect a debtor's business by maintaining the morale and dedication of a debtor's workforce is clearly a sufficient business justification. Accordingly, the payments should be permitted.

**4. Payment of the Deductions and Payroll Taxes is Appropriate Under Section 541**

24. In addition, as part of the relief requested herein, the Debtors seek authority to pay to the appropriate entities the Deductions and the Payroll Taxes. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Deductions, such as contributions to the Employee Benefit Programs, child support, and alimony payments, are not the Debtors' property, but rather, have been withheld from Employees' paychecks on another party's behalf. See, 11 U.S.C. § 541(b). Moreover, the Debtors and their officers are required by federal or state laws to make certain tax payments that have been withheld from their Employees' paychecks. See, 26 U.S.C. §§ 6672 and 7501(a). See also, City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95-97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created

trust relationship between debtor and city for payment of withheld income taxes); In re DuCharmes & Co., 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes). Further, because the Deductions and Payroll Taxes are not property of the Debtors' estates, these amounts are not subject to the normal bankruptcy prohibitions against payment. See, In re Dameron, 155 F.3d 718, 721 (4th Cir. 1998). The Debtors, therefore, request that the Court confirm that such trust fund withholding is not property of the Debtors' estate and that the Debtors may transmit the Payroll Taxes to the proper parties in the ordinary course of business.

25. It is also important to note that at this time, the Debtors do not seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an assumption or adoption of any employee agreements or policies. Rather, the Debtors merely seek to take steps that they believe to be necessary to keep their existing workforce intact to maximize the value of the bankruptcy estates. Also, the Debtors will retain the discretion to not make the payments contemplated by the Motion for particular Employees, and nothing in the Motion shall, in and of itself, confer upon any Employees or other parties an entitlement to administrative priority or other preferences in distribution from the Debtors' estates.

## B. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

26. The Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment in respect of the pre-petition claims of the Employees. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks and other financial institutions should be authorized and directed, when

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the pre-petition claims of the Employees.

### C. Failure to Honor Employee Obligations Within Twenty-One Days of the Petition Date May Cause Immediate and Irreparable Harm

27. Pursuant to Fed.R.Bankr.P. 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim that arose before the Petition Date within twenty-one (21) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.

28. As discussed above, the Employees are integral to the Debtors' operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first twenty-one (21) days of this case will jeopardize the loyalty and trust of the Employees. Certain of the Employees may leave and thereby cause serious disruption to the Debtors' operations during this critical period when the Debtors need the continued support of their Employees.

29. Moreover, the vast majority of the Debtors' Employees rely exclusively on their compensation, benefits, and reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay the Employees in the ordinary course of business. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the employee obligations.

### D. Request for Waiver of Stay

30. The Debtors also request that the Court waive the stay imposed by Fed.R.Bankr.P. 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As described above, the relief that the

Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their organization and preserve value for the benefit of creditors. The Debtors respectfully request that the Court waive the fourteen-day stay as the critical nature of the relief sought herein justifies immediate relief.

**WHEREFORE,** the Debtors respectfully request that this Honorable Court enter an Order granting the relief requested herein and for such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By: /s/ Robert W. Seitzer
ARIS J. KARALIS
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Proposed Attorneys for the Debtors

Dated: May 21, 2013