**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **COOPER-BOOTH WHOLESALE COMPANY, L.P.** | : | **BANKRUPTCY NO. 13-14519 (MDC)** |
| | : | |
| **Debtor** | : | |

**MOTION OF COOPER-BOOTH WHOLESALE COMPANY, L.P. FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO MAINTAIN AND ADMINISTER CUSTOMER PROGRAM AND HONOR CERTAIN PRE-PETITION OBLIGATIONS RELATED THERETO**

Cooper-Booth Wholesale Company, L.P. (the "Debtor"), by and through its proposed counsel, Maschmeyer Karalis P.C., hereby moves (the "Motion") this Honorable Court for the entry of an Order authorizing the Debtor to maintain and administer a customer program and honor pre-petition obligations to customers related thereto in the ordinary course of business and in a manner consistent with past practice, and in support thereof, respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule-based predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363, 1107(a) and 1108 and Fed.R.Bankr.P. 6003.

## BACKGROUND

4. On May 21, 2013 (the "Petition Date"), the Debtor; Cooper-Booth Transportation Company, L.P.; and Cooper-Booth Management Company, Inc. (collectively, the "Debtors")

filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession of their assets and continue in the management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Declaration of Barry Margolis in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

## Customer Program

6. To maintain its market share in its industry, the Debtor has dedicated extensive time and resources to developing a merchandising program (the "Customer Program") to develop goodwill with its customers. The Debtor believes its the Customer Program has been a successful business strategy—the costs of the Customer Program are largely offset by the revenue generated therefrom—and the program plays a critical role in the purchasing decisions of customers. As a result of the Customer Program, the Debtor has established strong loyalty among its customers.

7. As such, it is crucial to the Debtor's operations and going concern value that it is able to retain the loyalty, confidence and goodwill of its customers. Indeed, the Debtor believes it will be impossible to maintain its customer base unless it is authorized to continue the Customer Program and honor its customer obligations in the ordinary course of its business. Accordingly, by this Motion, the Debtor is seeking to assure its customers that, despite commencing this Chapter 11 Case, the Debtor will nevertheless continue to operate business consistent with past practice and with the same level of reliability and integrity for which they are well known.

8. The Customer Program, which the Debtor implements and modifies from time to time in the ordinary course of business, can generally be summarized as follows:

A. A customer may receive two (2) payments, a monthly payment (the "Monthly Volume Growth Rebate") and a quarterly payment (the "Quarterly Volume Enhancement"). Some programs do not include the quarterly portion. Each payment is based on the level of total monthly purchases from the Debtor. The customer may also be eligible to receive an "off invoice" discount on all non-cigarette products purchased from the Debtor providing they are using the Debtor exclusively.

B. For a customer to be eligible to receive payment from the Customer Program, it must use the Debtor exclusively as its convenience store products supplier.

C. When determining the monthly purchases for purposes of calculating the "Quarterly Volume Enhancement" payment, the Debtor averages the monthly sales during the quarterly period.

D. The amount that a customer receives from the Customer Program will depend entirely on the amount of purchases made from the Debtor.

9. As of the Petition Date, there is a pre-petition liability of approximately $963,822 owed to customers who participate in the Customer Program.

## RELIEF REQUESTED

10. By this Motion, the Debtor seeks entry of an order authorizing it, in its sole discretion, to honor the pre-Petition Date payments, rebates and discounts associated with the Customer Program (collectively, the "Customer Program Obligations").

11. The Debtor requests authority to honor the Customer Program Obligations and for authority to maintain and administer the Customer Program in the ordinary course of business.

## BASIS FOR RELIEF

**A. Ample Authority Exists to Support Payment of the Customer Program Obligations.**

12. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of pre-petition obligations in appropriate circumstances. See, e.g., In re The Philadelphia Orchestra Assoc., Case No. 11-13098 (ELF) (Bankr. E.D. Pa. April 20, 2011); In re Philadelphia Newspapers, LLC, No. 09-11204 (SR) (Bankr. E.D. Pa. Feb. 22, 2009); In re Tropicana Entrre t, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); In re Leiner Health Prods. Inc., No. 08-10446 (KJC) (Bankr. D. Del. March 12, 2008); In re Wickes Holdings, LLC, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Tweeter Home Entm't Group, Inc., No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); In re Hancock Fabrics, Inc., No. 07-10353 (BLS) (Bankr. D. Del. Mar. 22, 2007); In re Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006); In re J.L. French Auto. Castings, Inc., No. 06-10119 (MFW) (Bankr. D. Del. Mar, 6, 2006). In authorizing payments of certain pre-petition obligations, courts rely on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

13. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." See, In re CoServ, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business' going-concern value." See, Id. Some courts have noted there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the pre-plan satisfaction of a pre-petition claim." See, Id. The CoServ court specifically noted the pre-plan satisfaction of pre-petition claims would be a valid exercise of the debtor's fiduciary

duty when the payment "is the only means to effect a substantial enhancement of the estate . . ." See, Id.

14. Consistent with the debtor's fiduciary duties, courts have also authorized payment of pre-petition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of pre-petition wages). See also, Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay pre-petition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). Additionally, section 363(c) authorizes the Debtor to use property in the ordinary course of business.

15. In addition, the Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See, 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of pre-petition obligations pursuant to the "necessity of payment" rule, also referred to as the "doctrine of necessity."

16. The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C.&S.W.R. Co., 106 U.S. 286 (1882). The doctrine was expanded to non-

railroad debtors in the mid-twentieth century. See, Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where the alternative was cessation of operations).

17. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor. See, Id. (stating courts may authorize payment of pre-petition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). See also, In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay pre-petition claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

18. Today, the rationale for the necessity of payment rule — the rehabilitation of a debtor in reorganization cases — is "the paramount policy and goal of Chapter 11." See, In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). See also, In re Just For Feet, Inc., 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor in possession of pre-petition claims outside of a confirmed plan of

reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateauguay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of pre-petition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 COLLIER ON BANKRUPTCY, § 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay pre-petition claims immediately).

19. Courts also have permitted post-petition payment of pre-petition claims pursuant to section 105(a) of the Bankruptcy Code in other situations, such as if nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. See, Ionosphere Clubs, 98 B.R. at 167-77 (finding that section 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

20. This flexible approach is particularly critical where a pre-petition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not

satisfy its pre-petition obligations. In In re Structurlite Plastics Corp., the bankruptcy court stated it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately." 86 B.R. 922, 931 (Banta. S.D. Ohio 1988). The court explained that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." See, Id. at 932.

**B. Continuation of the Debtor's Customer Program and Payment of the Debtor's Customer Program Obligations Is in the Best Interests of the Debtor's Estate.**

21. The relief sought by this Motion is appropriate under each of the foregoing standards. The Debtor seeks to continue the Customer Program without interruption during the pendency of this Chapter 11 Case, which will inure to the benefit of all the Debtor's creditors. In contrast, if the Debtor does not continue the Customer Program post-petition, the Debtor risks alienating a significant number of its customers. Thus, in addition to potentially ruining its relationships with directly affected customers, nonpayment under the Customer Program Obligations could also create a market-wide perception that the Debtor does not honor the promises it made to its customers. Such a perception could erode the Debtor's customers' loyalty and adversely impact the Debtor's going concern value.

22. The Debtor believes that the relief requested herein will pay dividends with respect to its operations, both in terms of profitability and the engendering of goodwill, especially at this critical time following the filing of this case. Where retaining customer loyalty is critical to a debtor's operations, courts have routinely granted relief consistent to that which the Debtor is seeking herein. See, e.g., In re The Philadelphia Orchestra Assoc., Case No. 11-13098 (ELF) (Bankr. E.D. Pa. April 20, 2011); In re Philadelphia Newspapers, LLC, et

al., No. 09-11204 (SR) (Bankr. E.D.Pa. February 22, 2009); In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); In re Leiner Health Prods. Inc., No. 08-10446 (KJC) (Bankr. D. Del. March 12, 2008); In re Buffets Holdings, Inc., No. 08-10141 (MFW) (Bankr. D. Del. Jan. 1, 2008); In re Tweeter Home Entm't Grp., Inc., No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); In re Pope & Talbot, Inc., No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007).

### C. Failure to Honor Customer Program Obligations Within Twenty-One Days of the Petition Date May Cause Immediate and Irreparable Harm.

23. Pursuant to Fed.R.Bankr.P. 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. As described above, the Customer Program is integral to the Debtor's continued operations because it is necessary to maintain the confidence and goodwill of the Debtor's customers.

24. Accordingly, the Debtor submits that it has satisfied the requirements of Fed.R.Bankr.P. 6003 to support immediate payment of its Customer Program Obligations.

### D. Request for Waiver of Stay

25. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Fed.R.Bankr.P. 6004(h), an order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, honoring its Customer Program Obligations is essential to prevent potentially irreparable damage to the Debtor's operations and going concern value. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14)-day stay.

**WHEREFORE,** the Debtor respectfully requests that this Honorable Court enter an Order granting the relief requested herein and for such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By: /s/ Robert W. Seitzer
ARIS J. KARALIS
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Proposed Attorneys for the Debtors

Dated: May 21, 2013